This is an appeal by defendants from a judgment taxing as costs to be paid by them the fee of Dr. Frank L. Loria, who, as an expert medical witness called to the stand by plaintiffs, gave evidence touching upon one of the important issues. Plaintiff in this rule prayed that the expert's fee be fixed at $550.
Defendants contend that the fee should not be taxed as costs at all since the views of the expert witness were not accepted by the court and since the issue on which the evidence was given was decided adversely to the contention of the plaintiffs *Page 132 
And defendants also maintain that, in any event, the amount awarded to the doctor is grossly excessive. Defendants also contend that the rule to tax costs comes too late since the services as expert witness were rendered during the Month of May, 1939, whereas the rule to tax costs was not filed until June 6, 1940. Just what period of prescription is relied upon is not stated by defendants.
In the court below there was judgment fixing the fee at $350 and taxing this amount as costs to be paid by defendant.
For the facts of the principal controversy we refer to Penouilh v. Toye Brothers Yellow Cab Company, La.App., 195 So. 99.
Let us first dispose of the contention that the rule to tax costs was filed too late. We may at once state that no argument on the question was made, either orally or in brief, and also that the judgment did not become final until the 6th day of June, 1940.
In Hibernia Bank Trust Company v. J.M. Dresser Company, Ltd., 14 La.App. 555, 131 So. 752, it was held that, where the compensation of an expert is to be taxed as costs, prescription does not commence to run until the litigation has terminated. To the same effect, see In re City of New Orleans, 19 La.Ann. 382, and Lobdell v. Bushnell et al., 27 La.Ann. 394.
There is no longer any doubt that fees of expert witnesses may be taxed as costs to be paid by the party cast even though the experts have not been appointed by the court, but have been summoned by one of the parties. Levy v. McWilliams, 13 La.App. 444, 447, 127 So. 761, 129 So. 170; Suthon v. Laws, 132 La. 207, 61 So. 204; McCoy v. Arkansas Natural Gas Corporation,193 La. 238, 190 So. 391.
Counsel for defendants does not raise this issue, but he does stoutly maintain that, when the issue on which the expert testimony was offered is decided as contended for by defendants, the fee of the expert should not be properly charged against the defendants, even though, on other issues, the judgment in the principal controversy runs against the defendants.
In order to make clear the point which is raised by this argument, it is advisable that we partially restate the facts of the original suit.
Mrs. Penouilh, a passenger in a taxicab owned and operated by one of the defendants, sustained personal injury when that cab was involved in an accident in which another cab of the same company also participated. When suit was filed, defendants rather feebly asserted that there was no negligence whatever, and, consequently, no liability at all. But they principally devoted themselves to the contention that Mrs. Penouilh's ultimate deplorable physical condition had not resulted from the comparatively superficial and inconsequential injuries caused by the accident, but had been the natural result of various ailments, diseases, disorders and operations from which the unfortunate plaintiff had suffered prior to the accident.
Thus, though the defendants did raise the issue of liability vel non, they conceded that, if there was liability at all, they should be held for such injuries as had been caused by the accident, but they asserted that the presently serious condition of Mrs. Penouilh had not been the result thereof, and the expert testimony of Dr. Loria was devoted almost exclusively to his attempt to show that the accident was solely responsible for Mrs. Penouilh's present condition. We held that it was not and, accordingly, on that issue found for the defendants and limited recovery entirely to the injuries which we held had been caused by the accident.
Defendants, therefore, argue that the important issue was decided adversely to plaintiffs and that, therefore, they — defendants — should not be charged with the fees of an expert whose testimony was given solely in connection with that issue on which they were successful.
Plaintiffs, however, argue that the two issues may not be divided and that, since they recovered a judgment against defendants, the costs should follow the judgment and that defendants should pay these costs and that this fee should be included in such costs, and we agree that, in such situation, the two issues may not be divided where there has been a denial of liability by defendant, and it has been held that there is liability regardless of the fact that the amount awarded is comparatively small.
In innumerable cases in which physical injuries are involved it is advisable to obtain the advice of experts to assist the court in determining what will be the result of these injuries, and it would not do to require the compensation of the expert to depend upon the acceptance of his views *Page 133 
by the court. The court may hold that an injury has been sustained and that there is, therefore, liability, and may reject the contention — even supported by expert testimony — that the result of the injury will be permanent or serious disability. Surely an expert who may testify that such disability will be permanent or serious should not be deprived of his compensation because the court finds itself unable to agree. Should such a rule be established, experts would find themselves in the unfortunate situation where their views must be accepted by the court if they are to be recompensed for their services. We feel that, since the judgment has run against defendants, they should be held liable for costs, including the expert fee of Dr. Loria, even though his opinion was not accepted by the court and even though, on the issue concerning which he testified, defendants were successful.
But, when we come to value those services, we find ourselves unable to fix their value at anything like the amount awarded below. In the first place, although Dr. Loria contends that 90 per cent. of his testimony was given as an expert and only 10 per cent. as the physician who attended Mrs. Penouilh, we have carefully re-read the voluminous record and, without hesitation, say that not more than one-third of his testimony was given as an impartial expert witness. His testimony given in connection with his services as the attending physician cannot be taken into consideration on this rule.
In Levy v. McWilliams, supra [13 La.App. 444, 129 So. 171], we said: "* * * that such fees and expenses should be taxed as costs only where it is manifest that the testimony of the witnesses is in reality necessary as elucidating some technical or scientific subject, and that, where the witness is not in reality placed on the stand to give such information, but is, in fact, called to testify as to facts of the case, the fees and expenses of such witnesses should be paid by the party who summons them."
See, also, Cutitto v. Metropolitan Life Insurance Company, La.App., 172 So. 812.
We, therefore, at once eliminate from consideration approximately two-thirds of the testimony of Dr. Loria. A careful check of the record shows that the doctor testified on five days — May 4th, 8th, 9th, 23rd and 24th. On May 4th the transcribed testimony consists of ninety-four pages, of which sixty-eight contain the testimony of Dr. Loria. The transcribed testimony for May 8th consists of ninety-two pages and the day was devoted entirely to the testimony of Dr. Loria. The transcript for May 9th contains ninety-four pages, of which forty-six represented testimony of Dr. Loria. On May 23rd, fifty-nine pages of testimony were taken, the entire day being devoted to Dr. Loria's testimony, and on May 24th there were twenty-four pages of testimony taken, of which thirteen contained evidence given by Dr. Loria. So that, all in all, although he appeared on the stand for five days, approximately one-third of that time was devoted to the taking of testimony of other witnesses.
The doctor states that he had devoted a great deal of time to consultations with counsel for plaintiffs and he claims that he is entitled to additional compensation for the time so consumed. From his attitude while on the stand, there can be no doubt that those conferences were devoted almost entirely to the rendering of assistance to counsel for plaintiffs and not to the assistance of the court. Furthermore, although, as we view the record, practically all of the testimony involved opinions which would properly have been rendered by radiologists or pathologists, Dr. Loria finally admitted that he was not expert in either of these lines, having principally devoted himself to the practice of surgery.
The statute, Act No. 19 of 1884, which authorizes the taxing of such fees, requires that we take into consideration "the value of the time employed and the degree of learning or skill required". Furthermore, we think that the examination of Dr. Loria exceeded all reasonable bounds in length. It consisted of repeated and reiterated statements and could have been very much reduced in length. This is possibly not chargeable to Dr. Loria, but, to some extent, we think he was responsible for it, for his entire attitude made it necessary that counsel for defendants devote much time to the attempt to show that he was in error in the opinions rendered by him.
In Levy v. McWilliams, supra, we said that, although one of the parties has a right to summon so-called experts and to tax as costs the fees and expenses, the testimony of these experts "should be supervised most carefully" and that, in fixing the fees, courts should carefully study the testimony to determine whether it is "in reality necessary as elucidating some technical or *Page 134 
scientific subject". And we also stated "that, where the witness is not in reality placed on the stand to give such information, but is, in fact, called to testify as to facts of the case, the fees and expenses of such witnesses should be paid by the party who summons them".
It is true that certain other doctors testified in support of the charge made by Dr. Loria, but in doing so they took his statement concerning the amount of time and the degree of skill required into consideration, and it is well known and has often been said that the "esprit de corps" among members of such professions is responsible for extraordinarily high estimates which are made in valuing the services of brother members of such a profession.
In Central Glass Co., Ltd., v. German American Insurance Co., 13 Orleans App. 16, this court recognized the rule that the proper method of estimating and evaluating the services and compensation to be awarded to experts is around the lowest estimate, and said that the reason for the rule is "that there was an `esprit de corps' prevailing among men of the same profession which prompted them to value their services at the highest possible rate * * *".
The Supreme Court recognized this entirely human tendency more than one hundred years ago in Villalobos v. Mooney, 2 La. 331: "* * * The witnesses who were examined in this cause, most of them architects and undertakers by profession, differ materially in their estimates of the value of materials furnished and labour performed by the defendant. It is the interest of such men to value services which they are in the habit of performing, at the highest possible rate; and there is sometimes an esprit de corps prevailing among them, formidable to the interests of proprietors, when any collision occurs between the latter and one of their body. Taking these circumstances into view, the truth will, in most cases, be most probably found in the lowest estimate made by any one of them, when called on to value services rendered by men of their art; considered all of characters equally unexceptionable, and uninfluenced by circumstances, having a peculiar tendency to operate more on one than another of them."
Taking all of these matters into consideration, we reach the conclusion that $150 would be proper compensation for the services rendered by Dr. Loria as an expert witness.
The judgment appealed from is amended by the reduction of the amount thereof to $150, with legal interest from judicial demand, and, as thus amended, the judgment is affirmed. Movers to pay costs of appeal, defendants to pay other costs.
Amended and affirmed.